=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 192
In the Matter of Roseann Kilduff,
          Respondent,
        v.
Rochester City School District,
et al.,
          Appellants.


          Cara M. Briggs, for appellants.
          Anthony J. Brock, for respondent.


LIPPMAN, Chief Judge:

          By letter dated September 23, 2011, respondent School

District notified petitioner, a tenured school social worker,

that she was to be suspended for 30 days without pay for

specified misconduct. Petitioner made a written request for a

- 1 -

hearing on the specifications pursuant to Education Law § 3020-a, but was advised by respondent that she was not entitled to the process prescribed in that statute, and could challenge the disciplinary determination against her only by means of the procedures set forth in the collective bargaining agreement (CBA) between the School District and the Rochester Teachers Association, then most recently renegotiated in 2006.  That agreement provided in relevant part:

> "Except as provided elsewhere in this Section, any disciplinary action imposed upon any eligible teacher may be processed as a grievance and arbitration procedure" (emphasis added).[1]

After unsuccessfully grieving the matter via the process specified in the CBA, petitioner commenced this article 78 proceeding to annul the disciplinary determination, alleging that she had been disciplined without being afforded the process to which she was entitled under the Education Law as a tenured school district employee.  She pointed out that the relevant CBA had been altered through renegotiation and had taken effect since September 1, 1994, and that Education Law § 3020 (1)[2] required,

---

[1]In a subsequent subsection of the CBA it is provided that no eligible teacher may be discharged without the process prescribed in Education Law §§ 3020 and 3020-a.

[2]The portion of Education Law § 3020 (1) relevant to the issues presently raised states:

> "No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in

in substance, that all CBAs altered by renegotiation or becoming

effective on or after September 1, 1994 afford eligible (i.e.,

tenured) school district employees the option of challenging the

imposition of discipline by the process set forth in Education

Law § 3020-a, notwithstanding the provision of an alternative

process in a CBA.  Supreme Court, however, understood Education

Law § 3020 (1) to grandfather alternative, mandatorily prescribed

pre-September 1, 1994 CBA discipline procedures for as long after

September 1, 1994 as those procedures remained unaltered, even if

the CBA in which they were contained had during the same period

_____

accordance with the procedures specified in
section three thousand twenty-a of this
article or in accordance with alternate
disciplinary procedures contained in a
collective bargaining agreement covering his
or her terms and conditions of employment
that was effective on or before September
first, nineteen hundred ninety-four and has
been unaltered by renegotiation, or in
accordance with alternative disciplinary
procedures contained in a collective
bargaining agreement covering his or her
terms and conditions of employment that
becomes effective on or after September
first, nineteen hundred ninety-four;
provided, however, that any such alternate
disciplinary procedures contained in a
collective bargaining agreement that becomes
effective on or after September first,
nineteen hundred ninety-four, must provide
for the written election by the employee of
either the procedures specified in such
section three thousand twenty-a or the
alternative disciplinary procedures contained
in the collective bargaining agreement"
(emphasis added).

been altered in other respects through renegotiation.

Finding this understanding of the statute at odds with the provision's plain language, the Appellate Division reversed and granted the petition (107 AD3d 1536, 1537 [2013]). It read the statute categorically to require that all CBAs becoming effective on or after September 1, 1994, afford eligible employees facing discipline the right to elect the review process provided by Education Law § 3020-a, even if the CBA retained an unaltered alternative grievance procedure originally agreed upon before September 1, 1994 (107 AD3d at 1537). Inasmuch as the governing CBA took effect in 2006, petitioner, in the court's view, had the right pursuant to Education Law § 3020 (1) to choose the statutory review process over the alternative grievance procedure contained in the CBA, and the School District's failure to honor that right required the annulment of the challenged discipline, imposed without the process to which petitioner was entitled (id.). The matter is now before us pursuant to leave granted by this Court (22 NY3d 854 [2013]) and we affirm.

Prolix though the governing statute, Education Law § 3020 (1), may seem, it is plain that the legislative intent informing its 1994 amendment (L 1994, ch 691) was to assure that tenured educators against whom formal disciplinary charges were lodged could avail themselves, if they so chose, of the procedural protections set forth in contemporaneously amended

Education Law § 3020-a. While section 3020 (1) does "grandfather" pre-September 1, 1994 CBA discipline review procedures contained in unaltered CBAs, its evidently dominant purpose was prospectively to secure the right of tenured employees to avail themselves of the process set forth in Education Law § 3020-a. That purpose and the indefinite retention of mandatory alternative CBA review procedures are not easily, if at all, reconcilable. With that in mind, we believe the statute must be understood to sunset CBA provisions depriving tenured employees of the § 3020-a recourse to which they are otherwise entitled. Respondents object that the phasing out of these provisions would deprive the CBA parties of a bargained for benefit or detriment, but it is manifest that the 1994 amendment of Education Law § 3020 (1) was intended precisely to render a tenured employee's right to elect the statutory process in the event of discipline generally non-negotiable. We have, of course, previously recognized the importance the Legislature has accorded the status of tenure in the educational context as well as its attendant purpose to preserve the process by which tenured educators are to be disciplined and removed against the vagaries of collective bargaining (see Holt v Board of Educ. of Wetbutuck Cent. School Dist., 52 NY2d 625, 632 [1981]).

While, understandably, the Legislature did not in its 1994 amendment of section 3020 (1) undertake to invalidate

negotiated provisions in then operative CBAs,[3] or to disallow the
continued inclusion in CBAs of alternative, more "streamlined"
discipline procedures, neither did it countenance the indefinite
perpetuation of CBA terms depriving tenured employees of the
choice of process it expressly guaranteed.  Thus, the statute
unambiguously provides that when a CBA is altered by
renegotiation or takes effect on or after September 1, 1994, it
must permit tenured employees to elect section 3020-a's
discipline review procedures, notwithstanding the availability of
alternative, CBA-prescribed procedures.  The School District's
and dissent's proposed interpretation -- that only renegotiation
of alternative CBA discipline procedures themselves (as opposed
to renegotiation of the CBA in which they are contained), is
capable of triggering the statutorily required employee option --
is not only grammatically unavailable (since the phrases "that
was effective" and "and has been unaltered by renegotiation"

_____

[3]The grandfathering language which the dissent finds so
significant as to justify the conclusion that the Legislature
made a grammatical error, even though textually the statute is
grammatically unflawed, obviously does no more than emphasize
that the statute is not intended to undo still effective pre-
September 1, 1994 CBAs.  We decline to ascribe to it a counter-
textual purpose on the general theory that all grandfathering
provisions are at cross-purposes with a broader legislative
objective.  That may be conceptually true but is not a
particularly useful observation where, as here, the question is
not whether there is some measure of grandfathering intended,
but its extent.  The statute, read in its entirety, addresses
that question clearly and indeed with grammatical precision.  It
presents no occasion for the interpretive liberty the dissent
proposes.

unmistakably refer to the CBA in its entirety and not to any
distinct CBA components), but at odds with section 3020 (1)'s
manifest purpose of eventually ensuring that all tenured
educators will have the non-negotiable right to avail themselves
of the disciplinary process prescribed by the 1994 Education Law
amendments.

The relevant legislative history does not suggest that
respondent's proposed gloss is viable.  It is true that that
history does indicate that a purpose of the 1994 amendments was
to continue to authorize the use of alternative, bargained-for
discipline procedures (see e.g. Governor's Program Bill
Memorandum, Bill Jacket, Assembly Bill No. 11762-A, L 1994, ch
691), but it does not follow that the Legislature also meant to
deny tenured educators facing discipline the right to elect the
likely more protective review procedures set forth in Education
Law § 3020-a.[4]  That section, we note, was extensively revised as
part of the 1994 Education Law amendments to make the statutory
review process less cumbersome.  And, in view of that reworking,
the rationale for permitting the statutory process to be
supplanted by bargained-for CBA alternatives became significantly

---

[4]Indeed, it was understood at the time of the legislation's
consideration that "[f]or collective bargaining agreements
containing disciplinary procedures which are effective after
September 1, 1994, the employee must be able to elect either the
procedures contained in the agreement or those contained in 3020-
a" (Governor's Office of Employee Relations Memorandum in
Support of Assembly Bill 11762-a, Bill Jacket, L 1994, Ch 691
[emphasis supplied]).

less compelling.  In any case, it is the language of the statute that is the best evidence of the Legislature's intent (<u>Riley v County of Broome</u>, 95 NY2d 455, 463 [2000]), and Education Law § 3020-a plainly provides that, in any CBA taking effect on or after September 1, 1994, tenured employees must be permitted to elect the discipline procedures set forth in Education Law § 3020-a.  Here, as the Appellate Division correctly observed, the determinative circumstance is that the governing renegotiated CBA became effective in 2006.

We would add that, while the statute would trump a CBA provision becoming effective on or after September 1, 1994, relegating a tenured employee exclusively to a non-statutory discipline procedure, we perceive no reason to conclude that the present CBA in fact does that.  It provides merely that a disciplinary action "may," not that it "must," be processed in accordance with the agreement's grievance and arbitration provisions.[5]  Indeed, the record strongly suggests that it was only in view of the optional, and therefore statutorily inoffensive, character of the contractually available discipline process, that the provision, originally negotiated prior to September 1, 1994, was retained unaltered in the parties'

---

[5]That the CBA required § 3020-a process where the discharge of a tenured employee was sought, does not mean, as the District contends, that it purported to preclude a tenured employee from electing such process where less serious discipline was at issue.

subsequent CBAs.  Thus, even under the CBA itself, petitioner may well have not been foreclosed from invoking the statutory procedure.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Matter of Roseann Kilduff v Rochester City School District

No. 192

SMITH, J.(dissenting):

The Legislature amended Education Law § 3020 (1) effective September 1, 1994, to require that tenured teachers and other educators be allowed to elect the procedures contained in Education Law § 3020-a in preference to any other procedures that might be provided in a collective bargaining agreement. The amendment contained a grandfather clause, allowing discipline "in accordance with alternate disciplinary procedures contained in a collective bargaining agreement . . . that was effective on or before September first, nineteen hundred ninety four and has been unaltered by renegotiation." The majority interprets the words "and has been unaltered by renegotiation" in a way that gives them substantially no effect. Under today's decision, the Legislature was wasting its time when it put those six words in the statute.

The School District here seeks to enforce alternative disciplinary procedures that have been preserved unchanged in collective bargaining agreements with petitioner's union since at least 1992. The majority says that these procedures are not within the grandfather clause because, though the procedures have been continued in existence, they are not in the same agreement

- 1 -

that they once were; the collective bargaining agreement has been replaced by successor agreements, and its terms have been altered in ways irrelevant here, several times since September 1, 1994.

The majority makes no attempt to answer the question: What was the Legislature trying to accomplish when it wrote the words "which has been unaltered by renegotiation"?  If those words were not there, the statute would mean essentially the same thing that the majority says it means.  It would grandfather disciplinary procedures "contained in a collective bargaining agreement . . . that was effective on or before" September 1, 1994.  It seems to me that the obvious purpose of the "unaltered by renegotiation" language is to extend the grandfather clause's protection to procedures that remain unaltered in subsequent agreements.

The majority makes essentially two arguments in defense of its reading of the statute.  First, it points out that grammatically only the singular noun "agreement," not the plural noun "procedures," can be the subject of the verb "has been unaltered."  Secondly, it says that the School District's interpretation "is at odds with" the Legislature's "manifest purpose of eventually ensuring that all tenured educators will have the non-negotiable right to avail themselves" of section 3020-a procedures (majority op at 6).  I concede the grammatical point, but it seems to me much more likely that the Legislature made a grammatical error than that it intended the words "and has

been unaltered by renegotiation" to be inconsequential.  The

majority's other point seems to me without force.  Every

grandfather clause makes an exception to the accomplishment of

the legislative purpose.  That is what a grandfather clause is.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, with costs.  Opinion by Chief Judge Lippman.
Judges Graffeo, Rivera and Abdus-Salaam concur.  Judge Smith
dissents in an opinion in which Judges Read and Pigott concur.

Decided November 20, 2014